```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SUSAN REMILLARD, individually and as administratrix of the estate of Jason Remillard, et al.<br><br>     Plaintiffs,<br><br>     v.<br><br>CITY OF EGG HARBOR CITY, et al.<br><br>     Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 03-3123 (JBS)<br><br>**OPINION** |

APPEARANCES:

Salvatore B. Daidone, Esq.
SAL B. DAIDONE, PC
102 South Burnt Mill Road
Voorhees, NJ 08043
     Attorney for Plaintiffs

A. Michael Barker, Esq.
BARKER, DOUGLASS & SCOTT, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221
     Attorney for Defendants

**SIMANDLE**, U.S. District Judge:

     On March 11, 2002, in the early morning hours, an unarmed Jason Remillard was fatally shot by Officer Charles Baldi after leading the officer on a foot pursuit.  This action followed. Before the Court is a motion for summary judgment by Defendants. For the following reasons, the motion will be granted in part and denied in part.

## I.  BACKGROUND

At approximately 1:30 a.m. on March 11, 2002, Defendants Sergeant Charles Baldwin and Corporal Charles Baldi, in separate patrol cars, came upon a white Jeep Cherokee that matched the description of a vehicle that had been reported stolen.  (Baldi Dep. Tr. 31:17-32:1.)  Sergeant Baldwin, who was the first to come upon the jeep, followed behind the vehicle until the driver pulled over.  As Defendant Baldi pulled up behind Baldwin, the two officers saw Plaintiff Remillard exit the driver's side of the vehicle.[1]

According to the officers, Baldwin instructed Remillard to come toward him, but Plaintiff instead turned and ran in the opposite direction.  (Id. at 36:12-21.)  Baldwin told Baldi to pursue the fleeing Remillard while he remained with the vehicle and its passenger.  Baldi first pursued Remillard in his patrol car, and then continued the pursuit on foot.  According to Defendant Baldi, at some point during the foot pursuit Remillard stopped and placed his hands above his head against the external wall of a residence.  (Id. at 24:11-14; 49:10-16.)

Once Remillard placed his hands against the wall, Baldi drew

---

[1] Corporal Baldi recognized Remillard based on previous interactions, and his knowledge that Plaintiff had previously assaulted another Egg Harbor City officer and been arrested for committing certain violent acts.  (Baldi Dep. Tr. 29:6-21; 77:13-16.)  Officer Baldwin, on the other hand, did not recognize Remillard.  (Baldwin Dep. Tr. 11:8-11.)

2

his service weapon in a "cover position" and ordered Remillard to get on the ground. (Id. at 32:2-10; Pl. Ex. A at 11.) According to Baldi, Remillard, without responding verbally, proceeded to lower his hands and turn towards Baldi.[2] As Remillard did so, Baldi maintains, Remillard raised his hands to his waist. (Pl. Ex. A at 12.) At that point, Baldi alleges that he lost sight of Plaintiff's hands. (Id.) Apparently fearing that Remillard was reaching for a weapon, Baldi fired a single fatal shot into Remillard's torso. (Baldi Dep. Tr. 50:17-51:11.) According to the Atlantic County Medical Examiner's Report, the bullet entered below Remillard's right rib cage, and exited directly across the body underneath the left side of his rib cage. (Pl. Ex. A.) In fact, Remillard was unarmed.

At the time of Remillard's death, Plaintiff Elizabeth Killian, though not married to Remillard, was pregnant with his child. On August 2, 2002, Elizabeth Killian gave birth to a son, Jason Peter-Paul Remillard, Jr. This suit was filed the following year by Plaintiffs, Susan Remillard, individually and as administratrix of the estate of Jason Remillard, the deceased; Elizabeth Killian, individually and as mother of the son of Jason Remillard; and Jason Remillard, Jr., an infant, by his mother, against Defendants City of Egg Harbor City, Mayor James E.

---

[2] As discussed below, Baldi has offered different accounts of the speed with which Remillard allegedly turned towards him.

McGeary, Public Safety Director Mark Emmer, Sergeant Charles Baldwin and Corporal Charles Baldi under 42 U.S.C. §§ 1983, 1986 and 1988 alleging violations of the Fourth and Fourteenth Amendments, and under state law.[3]

## II.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

---

[3] At the outset, the Court holds that summary judgment will be granted as to Plaintiff's claim under 42 U.S.C. § 1986. Section 1986 is part of the Ku Klux Klan Act of 1871.  "Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also." Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980).  Here, Plaintiffs have not pled a claim under Section 1985(3).  Accordingly, summary judgment will be granted in favor of Defendants on the Section 1986 claim.

[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[5] Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**III. DISCUSSION**

    A.    Fourth Amendment Excessive Force Claim

Plaintiffs assert an excessive force claim under the Fourth Amendment. For the reasons now explained, the Court finds that there are questions of fact as to whether Defendant Baldi violated Jason Remillard's Fourth Amendment rights and, therefore, the Court will deny the motion as to that claim.

The Fourth Amendment prohibits the use of excessive force by a law enforcement officer. U.S. Const. amend XIV. See Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

> The test is an objective one, which scrutinizes the reasonableness of the challenged conduct. The facts to be examined include "the severity of the crime at issue, whether the suspect poses an immediate threat to

---

[5] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

> the safety of the officer or others, and whether he is
> actively resisting arrest or attempting to evade arrest
> by flight." Reasonableness is to be evaluated from the
> "perspective of a reasonable officer on the scene,
> rather than with the 20/20 vision of hindsight."

Carswell, 381 F.3d at 240 (quoting Graham, 490 U.S. at 396 (internal citations omitted)). "[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennesee v. Garner, 471 U.S. 1, 11 (1985).

    1.   Corporal Baldi

There are several considerations guiding this Court's decision not to grant summary judgment in favor of Defendant Baldi on Plaintiffs' excessive force claim. In the first instance, Baldi's credibility as a witness in this case is particularly relevant as he is the only eye-witness to the events leading up to the shooting. A jury, unlike the Court, will have the benefit of live testimony to assist in evaluating Baldi's truthfulness. A jury may consider Baldi's self-interest and credibility as well in deciding whether to believe Baldi's testimony.

Next, certain material issues of fact prevent the grant of summary judgment. First, there are inconsistences in Baldi's accounts of the fatal incident. Specifically, during his deposition Baldi testified that Remillard "quickly turned

6

towards" him as he raised his hands to his waist. (Baldi Dep. Tr. at 52:14-18.) During his interview with Sergeant DeShields, however, Baldi stated that Remillard "turn[ed] slowly towards" him as he raised his hands to his waist. (Def. Ex. 11 at 4.) This discrepancy is material as it bears upon whether Baldi had probable cause to believe Remillard posed a threat of serious physical harm.

Finally, a jury could reasonably conclude, based on the medical examiner's report identifying the relative placement of the entry and exit wounds, that Remillard had not turned towards Baldi when he was shot. Instead, considering that the bullet entered on Plaintiff's side, a jury may determine that Remillard was still facing the wall at the time of the shooting. Likewise, the medical report may reasonably support a finding that Remillard's hands were not near his waist at the time Baldi fired his weapon; if they were, a jury could conclude that the bullet would have first struck Remillard's right arm or hand, which it did not.

Because a reasonable jury could find, based on the above, that excessive force was used by Defendant Baldi in fatally shooting Jason Remillard, the Court will not determine as a matter of law that Defendant Baldi's conduct violated a clearly

7

established Fourth Amendment right.[6]  As these same factual questions bear upon the issue of qualified immunity, the Court likewise cannot now decide that question of law because its determination hinges upon resolving highly disputed facts about how this incident occurred.[7]  See Carswell, 381 F.3d at 242.  Accordingly, the Court will deny summary judgment on Plaintiffs' excessive force claims against Baldi.

    2.   Sergeant Baldwin

Plaintiffs additionally allege that Sergeant Baldwin violated Remillard's Fourth Amendment rights.  Plaintiffs have presented no evidence, however, suggesting that Baldwin was present during the incident, or that he otherwise acquiesced in the shooting.  Accordingly, the Court will enter summary judgment

---

[6] These allegations give also rise to state law claims against Baldi and, thus, the Court will deny summary judgment on those claims as well.

[7] The qualified immunity inquiry requires the Court to evaluate whether the officers' conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in this inquiry is whether the officers' conduct violated a constitutional right. "This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 200 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  In the first instance, for reasons the Court just explained, there are material disputed facts regarding the reasonableness of Baldi's actions.  In any event, it is for a jury to decide the "disputed historical facts material to the qualified immunity question." Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (citing Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997)).  The same is true regarding state law immunity and, thus, the Court will not consider those issues at this time.

in favor of Defendant Baldwin.

"It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." C.H. Olivia, 226 F.3d 198, 201 (3d Cir. 2000) (en banc) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Township, 50 F.3d 1186, 1190 (3d Cir. 1995)).  There is no vicarious, respondeat superior liability under § 1983.  See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Hopp v. City of Pittsburgh, 194 F.3d 434, 441 (3d Cir. 1999).

Here, because Baldwin did not participate in the conduct giving rise to the alleged constitutional violation, summary judgment will be entered in favor of Sergeant Baldwin.  The Court agrees with Defendants that Plaintiffs have presented no evidence that Sergeant Baldwin possessed contemporaneous knowledge of the circumstances faced by Baldi, or of Baldi's conduct in pursuing and shooting Remillard.  At most, viewing the evidence in the light most favorable to Plaintiffs, as the Court must, Baldwin did nothing more than instruct Baldi to pursue the fleeing Remillard as Balwin attended to the passenger in the stolen vehicle.  By no stretch can the mere instruction to pursue a fleeing felon rise to the level of a constitutional tort.

From the foregoing facts, no reasonable jury could determine either that Baldwin had actual knowledge of the conduct giving rise to the alleged constitutional violation, or that he acquiesced to the same.  Accordingly, the Court will enter summary judgment in favor of Sergeant Baldwin on the Fourth Amendment excessive force claim.[8]

      3.   <u>City of Egg Harbor City Mayor McGeary and Director Emmer</u>

Plaintiffs next claim that Defendants City of Egg Harbor City, Mayor McGeary and Safety Director Emmer are liable under Section 1983 and state law for failing to properly train and supervise Defendant Baldi.  For the following reasons, that claim is meritless.

Local governing bodies can be sued directly under Section 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690 (1978).  Municipal liability attaches only where execution of a government's policy or custom, whether made by its lawmakers or

---

[8] Additionally, Defendant Baldwin is entitled to immunity on Plaintiffs' state law claims under N.J.S.A. 59:3-3.  That provision states that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law."  As Plaintiffs have offered no proof of willful misconduct, Baldwin is entitled to immunity.

10

by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  Monell, 436 U.S. at 694. In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  In other words, an official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983.  Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694).

    A state official may also be held responsible under § 1983 for failing to exercise supervisory authority, but only if that official "has exhibited deliberate indifference to the plight of the person deprived."  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  Accordingly, a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he must also allege "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval."  Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997) (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988)).

Here, it is undisputed that officers within the Egg Harbor City Police Department, including Defendant Baldi, attended training sessions at which they were instructed on firearms and the use of force. Moreover, it is undisputed that all Egg Harbor City officers, including Defendant Baldi, attend an annual three-day seminar in Atlantic County for training and instruction on, among other things, firearms use and safety, defense tactics and reduced light firearms training. In addition to the annual three-day training session, all officers are separately evaluated biannually in firearms safety and use. At all relevant times, Defendant Baldi successfully completed that training.

Plaintiffs here have not presented any evidence from which a reasonable jury could determine that the City of Egg Harbor City maintained an official policy or custom warranting a finding of municipal liability. Likewise, Plaintiffs have failed to demonstrate that Defendants McGeary or Emmer had actual knowledge of the conduct giving rise to the alleged constitutional violation, or that they communicated a message of approval through inaction. For these reasons, summary judgment will be entered in favor of Defendants City of Egg Harbor City, McGeary and Emmer on Plaintiffs' excessive force claims.

B.  Fourteenth Amendment Due Process Claims

In Plaintiffs' third cause of action, Killian and her son allege Fourteenth Amendment Due Process violations. For reasons

now explained, the Court agrees with Defendants that those claims must fail as a matter of law.

In McCurdy v. Dodd, 352 F.3d 820 (3d Cir. 2003), the plaintiff brought a § 1983 action after his son was fatally shot by police officers, arguing that the defendants had violated his parental liberty interest in the companionship of his independent adult son. The Third Circuit rejected the plaintiff's claim, holding that "the Due Process Clause does not protect the interest of a parent in the companionship of his or her adult child . . . ." McCurdy, 352 F.3d at 822. The court explained:

> [W]e are hesitant to extend the Due Process Clause to cover official actions that were not deliberately directed at the parent-child relationship, in disregard of the Supreme Court's admonition in Daniels [v. Williams], 474 U.S. 327, 331 (1986). . . . [W]hen officer DiPasquale reacted to the situation on the night of October 1, 1998, he was acting on his perceptions, however misguided, of the public danger posed by Dawson's conduct. His actions were directed solely at the person at the center of that volatile situation – Dawson himself. Cynthia Dawson, McCurdy, and the parent-child relationships between them were not on DiPasquale's mind when he pulled the trigger. Simply put, his actions were not directed at the relationships between the parents and their son . . . . It would, therefore, stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship.

352 F.3d at 829-30. See Ehly v. City of Philadelphia, 2004 U.S. Dist. LEXIS 23493 (E.D.Pa. 2004) (holding the Due Process Clause "has never been held to protect against government actions that affect the parental relationship only incidentally").

13

Plaintiffs here allege the same sort of incidental injury. They offer no proofs as to how Defendant Baldi's actions were directed at the parent-child relationship.  Accordingly, the Court will enter summary judgment in favor of Defendants on Plaintiffs' Fourteenth Amendment claims.

**IV. CONCLUSION**

In light of the foregoing, the Court will grant in part and deny in part the motion for summary judgment, and Plaintiffs' excessive force claims against Defendant Baldi will be permitted to proceed.  An appropriate Order will be entered.


**March 27, 2006**          **s/ Jerome B. Simandle**
Date                         JEROME B. SIMANDLE
                             U.S. District Judge